UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 15-24218-CIV

RICARDO MIGUEL NARANJO CAPELLI
And all others similarly situated under
20 U.S.C. 216(b)

       Plaintiff,

Vs.

MIAMI BEACH HOSPITALITY, LLC
D/b/a THE DEAUVILLE BEACH RESORT

       Defendant

_____/

### DEFENDANT'S MOTION FOR SUMMARY JUDGEMENT AND INCORPORATED STATEMENT OF FACTS AND MEMORANDUM OF LAW

    **COME NOW**, Defendant, Miami Beach Hospitality, LLC ("MBH"), by and through its undersigned counsel and pursuant to Federal Rule of Civil Procedure 56, hereby file its Motion for Summary Judgment and Incorporated Statement of Facts and Memorandum of Law ("MSJ") and in support thereof, state as follows:

### INTRODUCTION

    Plaintiff Ricardo Miguel Naranjo Capelli filed a Complaint Under 29 U.S.C. 2-1-216 Overtime Wage Violations ("Complaint") where he alleged at paragraph 13 of the Complaint that "*Between the period of on or about July 1, 2011 through on or about October 9, 2015, Plaintiff worked an average of 45 hours a week for Defendant and was paid an average of $8.05 per hour but was never paid anything at all for any hours worked over 40 hours in a week as required by the Fair Labor Standards Act.*" The Plaintiff also filed a Plaintiff's Statement of Claim where he alleged that for the period from 11/11/2012 to 10/9/2015 he worked 5 hours of overtime a week for 148 weeks for a total of $8,931.80.  However, as will be shown below, Plaintiff's claims for unpaid

overtime as stated in his Complaint and Plaintiff's Statement of Claim are nothing more than vague and conclusory allegations that are no more than a recitation of the causes of action for unpaid overtime because during his deposition Plaintiff admitted that he had no evidence to support his allegations that he was owed overtime and merely took an average to conclude that he worked an average of 45 hours per week without being able to explain how he got to that number. See: Bell Atlantic Corporation v. Twombly, 550 US 544 (2007)(A plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.); Ashcroft v. Iqbal, 556 US 662 (2009) (Pleading that offers labels and conclusions or formulaic recitation of elements of cause of action will not do, nor does complaint suffice if it tenders naked assertions devoid of further factual enhancement.)

Plaintiff filed a separate case alleging overtime violations against another defendant, Lariviere Parking Systems, LLC under case number 1:15 CV-24235 PCH where Plaintiff alleged that between December 15, 2011 and August 15, 2011 he worked an average of 55 hours a week. Plaintiff's claims in his lawsuit against Lariviere Parking Systems, LLC while at the same time claiming he was working on an average 45 hours a week. A copy of Plaintiff's Complaint in Ricardo Miguel Naranjo Cappelli v. Lariviere Parking Systems, LLC is attached hereto as **Exhibit "A."**

## STATEMENT OF UNDISPUTED MATERIAL FACTS

The following undisputed facts are offered by the Defendant to support its Motion for Summary Judgment:

### Plaintiff's Deposition.

I.   <u>Plaintiff Admitted that He Signed a Release.</u> During the deposition of the Plaintiff taken on May 10, 2016, Plaintiff  admitted that he executed a release where he waived any claims against the Defendant for which he accepted payment. As part of the settlement with the Secretary of Labor Plaintiff executed a certification on February 3, 2014 whereby Plaintiff certified that he had actually received payment of $188.50 as wages, liquidated damages and other compensation due to the Plaintiff. (P.43-45 of Plaintiff's deposition)   The Plaintiff claimed at his deposition that he had not read the Release before he signed. (P.44-45 of Plaintiff's deposition).

II.   <u>Plaintiff Admitted He has No Records Or Other Evidence That Supported His Claims.</u> The Plaintiff admitted at his deposition that he had no records to support his claim and that he had no other evidence that supported his allegation that he was not paid overtime by the Defendant. (P.21 of Plaintiff's deposition, lines 24-1, lines 2-5)

III.   <u>Plaintiff Testified He Just Took an Average Figure of the Number of Hours He Believed to Have Worked to Determine the Number of Hours He Worked Not Based Upon Any Records He Kept.</u> The Plaintiff testified that because he has no records to support his allegation that he was not paid overtime he took an average figure of the number of hours he believed he worked and that is how he determined that he was working for 45 hours a

week during the time he claims he was not paid.  (P. 30-31 of Plaintiff's deposition, lines 16-25, lines 1-10)

IV.  <u>Plaintiff Admitted That He Was Required to Clock in and Out</u>. At his deposition, the Plaintiff admitted that he was required to clock in with his handprint and the last four numbers of his social security number as a unique identifier. Plaintiff testified that there were two time clocks, one in the front and on the side of the security office. (P.21 of Plaintiff's deposition, lines 6-13) During her deposition, Ms. Leyani Gonzalez who was employed with Defendant and was in charge of payroll until 2015 testified that employee's hours for payroll purposes were kept track by a time clock that required employees to put in a PIN number and use their fingerprint. (P.13) This testimony was echoed by Mr. William Acosta[1] who was the manager in overall charge of the parking attendants,  Andy Fernandez, Plaintiff's direct supervisor,[2]

V.  <u>Plaintiff Admitted that He Was Paid by Check</u>. The Plaintiff admitted that the check stated the number of hours worked although he stated that it listed the number of hours as 40 hours not 42 or 43 as he apparently believed he worked. Plaintiff testified that the check states the check and deductions to arrive at a net amount paid. (P.26 of Plaintiff's deposition, lines 22-25) ;(P.27 of Plaintiff's deposition, lines 1-25) ;);(P.28 of Plaintiff's deposition, lines 1-12). Other witnesses testified regarding the manner in which payroll was made as follows:

---

[1] Mr. Acosta testified in his deposition that there was a time clock and you had to clock by using a handprint. (P.13, lines 7-21)

[2] 3.Mr. Fernandez testified that a punch clock has been used that uses the employee's fingerprint to clock in and out since 2012. (P.10, lines 16-24)

a. Deposition of William Acosta, Defendant's front service manager which included supervising the parking attendants such as Plaintiff where he testified that: The employees are paid by check. (P.13, lines 22-24);

b. Deposition of Leyani Gonzalez, Defendant's employee in charge of payroll until 2015 testified that: The employees were paid bi-weekly and were never paid in cash. (P.14, lines 5-8); That payroll was made bi-weekly and was paid by check. (P.20, lines 19-20);

c. Deposition of Andy Fernandez, Plaintiff's direct supervisor who testified that: That everyone was paid by check. (P.14,23-25);

d. Deposition of Maria Alvarez, the former human resources director and manager on duty testified that: She and all employees were paid by check. (P.25, lines 5-8).

VI.    <u>Plaintiff Testified That While He Was Employed with Defendant, He Was Employed with Another Company Another Company, La Riviera Parking from December, 2011 through March, 2013 Six Days a Week.</u> In his deposition Plaintiff testified that from December, 2011 through March, 2013 he was working six days a week as a valet for a company called La Riviere Parking at the same time he was working for the Defendant. (P.10 of Plaintiff's deposition, lines 1-8)

VII.   <u>Plaintiff Testified That He Was Paid Overtime Only Once but This Is Contrary to the Plaintiff's Own Initial Disclosure and Trial Witness List.</u> During his deposition Plaintiff testified that there was <u>only one instance</u> where he was paid overtime. (P. 27-28 of Plaintiff's deposition, lines 1-15, lines 1-4)  However, contrary to Plaintiff's testimony at his deposition, the payroll records submitted by the Plaintiff himself as part of the

Plaintiff's Initial Disclosure and Trial Witness List Dated 1/7/16 ("Plaintiff's Disclosures") included copies of Plaintiff's Statement of Claim which have three wage statements showing that Plaintiff was paid 24 hours of overtime at $12.00 per hour for a total of $288.00 and one hour of overtime in 2014 at $12.00 per hour for a total of $13.28.

**Depositions of Defendant's Employees.**

VIII.   <u>Deposition of William Acosta.</u>

Mr. Acosta's last employment with the Defendant was front service manager which included supervising the parking attendants such as Plaintiff.  Mr. Acosta testified that:

a.  Plaintiff was employed by the Defendant as a parking attendant. (P.7, line 15)

b.  The parking attendant greets the guest when he or she checks in to let them know how parking works and advises them about the parking options at the hotel. (P.7, lines 16-25) (P.8, lines 1-12)

c.  Did not see Plaintiff work more than 40 hours in a week. (P.9, lines 23-25)

d.  That most of the time he saw the Plaintiff work the shift from 3:00 PM to 11:00 PM. (P.10, lines 3-5)

e.  That Plaintiff worked five days a week with two days off. (P.10 lines 10-12)

f.  The reason why working more than 40 hours in a week was not necessary was that the Defendant had three shifts. (P.10, lines 20-25)

g.  That hours were tracked by checking with the supervisor to make sure that the employee actually worked the hours. (P.11, lines 12-18)

h.  There was a time clock and you had to clock by using a handprint. (P.13, lines 7-21)

i.  The employees are paid by check. (P.13, lines 22-24)

j.   When there are tips, the employees share it themselves. (P.14, lines 1-4)

k.   The employees were paid bi-weekly and were never paid in cash. (P.14, lines 5-8)

l.   Employees that worked overtime were compensated for it. (P.15, lines 6-9)


IX.   **Deposition of Leyani Gonzalez**.

Ms. Gonzalez was employed with Defendant since 2006 as a receptionist assisting the accounting and human resources departments. She later became the person in charge of payroll for the Defendant. Ms. Gonzalez testified that:

a.   She had a 30-minute break that was completely uninterrupted. (P.10, lines 2-6)

b.   Normally she did not work more than 40 hours in a week. (P. 11, lines 16-19)

c.   She was paid extra for the hours over 40 that she worked. (P. 11, lines 20-22)

d.   She was paid by check by company check through payroll. (P.12, lines 2-4)

e.   All the check stubs would reflect the pay rate, how many hours worked in the pay period and earnings. (P.12, lines 10-16)

f.   The check stub would show a different rate of pay for hours worked over 40 hours in a week. (P. 12, lines 17-19)

g.   Employee's hours for payroll purposes were kept track by a time clock that required employees to put in a PIN number and use their fingerprint. (P.13)

h.   All hourly employees were required to use the time clock to swipe in and out. (P. 14, lines 5-6)

i.   That there were two time clocks though most employees used one. (P.15, lines 15-20)

7

j.   If the time clock did not read the hand, it would beep and not blink green. (P.15, lines 23-25)

k.   That she never performed work before she clocked in and was paid overtime if she worked over 40 hours.  (P.18, lines 18-20)

l.   The Defendant printed out time sheets and they were reviewed by the managers for any needed changes such as "missing clock" (referring to clocking in and out), sick days, vacations. (P.19, lines 14-25)

m.   That payroll was made bi-weekly and was paid by check. (P.20, lines 19-20)

n.   That to her knowledge no employees were paid by cash. (P.20, lines 23-25)

o.   That she recalled seeing posters from 2006 to 2015 that reflected overtime and minimum wage laws. (P.29, lines 14-24)

p.   That during the entire time she was working there did she have "any knowledge of anyone telling their employee clock out and keep working." (P.33, lines 1-7)

q.   That she was never instructed to work and only clock in at a certain hour. (P.33, lines 8-10)

r.   That to her knowledge Willie did not instruct her or any employees to work off the clock. (P. 44, lines 7-10)

s.   That she was required to punch out and back in for her lunch break. (P.45, lines 10-14)

t.   That the valet parkers were required to maintain their hours using the ADP time clock. (P.45, lines 15-18)

X.   **Deposition of Andy Fernandez**.

On April 5, 2016 the deposition of Andy Fernandez, Defendant's valet supervisor was taken by Plaintiff's counsel. At his deposition Mr. Fernandez testified as follows:

a.   That Plaintiff only worked one shift a day. (P. 9, lines 10-18)

b.   That he could not remember any supervisor or anyone told the valets to do work without the time being on the clock. (P.10, lines 10-15)

c.   That a punch clock has been used that uses the employee's fingerprint to clock in and out since 2012. (P.10, lines 16-24)

d.   That he believed that Plaintiff only worked "when he was on the punch clock" because "they are very strict with the punch."

e.   That he thought that the Defendant used the fingerprint machine to determine how much or how many hours the valets should get paid. (P.14, lines 1-5)

f.   That everyone was paid by check. (P.14,23-25)

g.   That Defendant does not offer valet service, they do customer service and the customer parks their own car. (P.15, lines 15-23)

h.   That sometimes a guest would leave a tip but it was not very much or regular. (P.16, lines 14-20)

i.   That he believed that Defendant paid the minimum wage to all their valets. (Page 17, lines 4-8)

j.   That any tips were put in a box and then split it evenly. (Page 17, lines 9-23)

k.   That he does not remember Plaintiff complain about his wages or rate of pay. (P. 20, lines 16-23)

l.  That the employees get a breaks but that the employees decide when they take the break. (P.22, lines 11-25)

m.  That they did not use the finger punching system to punch out of the system when they took a break. (P.23, lines 8-12)

XI.  **Deposition of Maria Alvarez.**

Ms. Alvarez formerly served as the Manager on Duty ("MOD") and human resources manager. Ms. Alvarez testified that:

a.  There were posters in the HR department, where the employees punch in and the employees' cafeteria. (P.13, lines 3-13)

b.  She had lunch breaks of an hour. (P. 16, lines 3-4)

c.  She was able to leave during lunch and it was uninterrupted.

d.  She had two 15 minute breaks during the day. (P. 16, lines 1-2)

e.  As an HR director she took her breaks when she needed to as with lunch. If she was busy interviewing she would go to lunch when she was finished. (P.21, lines 11-25)

f.  She and all employees were paid by check. (P.25, lines 5-8)

g.  Employees will put their hands on the time clock and it records the time they come in and leave including when they take their breaks and lunch. (P.33, lines 10-25; P.34, lines 1-2)

h.  Someone cannot sign in for someone else. (P.35, lines 2-5)

i.  On the few occasions that there was a malfunction with the clock, ADP corrected it immediately. (P.35, lines 9-21)

j.  She did not recall anybody working more than one shift unless it was required for them to work the extra shift and then they would get paid for overtime. (P.38, lines 20-25)

k.  As an example of the reasons why someone would work extra hours is if there was an event that had not concluded then the employees would be asked to work overtime and then they would be paid overtime. (P.39, lines 1-7)

l.  Sometimes the amount of people coming in is unexpected and if an extra person was needed that's when you request that an employee stay longer. (P.41, lines 18-22)

m.  Requesting that people stay longer was required only on a few occasions. (P.41, lines 14-15)

n.  If an employee was asked to stay longer, it could be an hour or two extra. (P.42, lines 17,18)

o.  Any tips that employees receive are on voluntary basis and has no effect on the employee's salary. (P.45, lines 15-20)

p.  Months would pass before Plaintiff would work over 40 hours in a week. It was not a customary thing to ask an employee to work overtime. It would be just on special events.  (P.53, lines 8-12)

q.  Plaintiff and all employees were instructed to use the web clock. (P.54, lines 16-19)

r.  She never heard Plaintiff or any employee being instructed not to clock in and work before he clocked in. (P. 54, lines 18-25)

s.  She never heard of Plaintiff being instructed to clock out and continue to work. (P.55, lines 2-10)

t.  Plaintiff had never complained while she worked in HR of having to clock out and continue to work. (P.55, 17-23)

XII.  **Memorandum in Support of Motion for Summary Judgment**.

The Summary Judgment Standard.

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56c. The plain language of Rule 56c mandates the entry of summary judgment after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  In such a situation, there can be no genuine issue of material fact since a complete failure of proof concerning an essential element of the non- moving party's case necessarily renders all other facts immaterial.  The moving party is entitled to judgment as a matter of law where the nonmoving party has failed to make a sufficient record on an essential element of the case with respect to which that party has the burden of proof. Celotex v. Catrett, 466 U.S. 317, 323 (1986).

After the movant has met its burden under Rule 56c, the burden of production shifts and the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Id. at 325.  According to the plain language of Rule 56c,

the non-moving party "may not rest upon the mere allegations or denials of the adverse party's pleadings," but instead must come forward with "specific facts showing that there is a genuine issue for trial." <u>Matsushita Elect. Indust.Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986). Hence, so long as the non-moving party has had an ample opportunity to conduct discovery (which is the situation in this case), he or she must come forward with affirmative evidence to support its claims in the complaint. <u>Anderson v. Liberty Lobby Inc.</u>, 477 U.S. 242, 257 (1986). A mere scintilla of evidence supporting the opposing party's position will not suffice, as there must be a sufficient showing that the jury could reasonably find for the non-moving party on the central issue (in this case, whether there is evidence that Defendant failed to pay Plaintiff overtime). <u>Walker v. Derby</u>, 911 F.2d 1573, 1577 (11 Cir. th1990). Moreover, self-serving affidavits also will not suffice (that is, an affidavit cannot in and of itself create a disputed fact if it is self-serving).

<u>Legal Memorandum in Support of Summary Judgment</u>.

a. <u>Summary Judgment Should Be Granted as a Result of the Release</u>. Plaintiff signed a release under the supervision of the Secretary of Labor on January 28, 2014 for $188.50 for unpaid wages covering the workweek from April 23, 2011 through the workweek ending April 27, 2013 (hereafter referred to as the "Release") where he waived any claims against the Defendant. Plaintiff admitted at his deposition that he executed the Release where he waived any claims against the Defendant for which he accepted payment. There was no allegation by the Plaintiff in the Complaint or testimony in his deposition that he was prevented from reading the Release. See: <u>Allied Van Lines, Inc. v. Bratton</u>, 351 So.2d 344 (Fla. 1977) (Unless one can show facts and circumstances to demonstrate that he was prevented from

reading the contract, or that he was induced by statement of the other party to refrain from reading the contract, the contract is binding.)

b. <u>Plaintiff Has Not Met His Burden of Proof That He Performed Worked for Which he was Not Properly Compensated for and That the Defendant Knew or Should Have Known of the Overtime Work</u>.

    i. <u>Defendant Has Kept Adequate Records that Document the Hours of Work of Its Employees Through the Use of a Time Clock That Requires a Fingerprint and Unique PIN Number to Badge in and Out.</u> All the testimony of the deponents in this case, including the Plaintiff agree that the Defendant uses a time clock that requires hourly employees to badge in and out using their fingerprint and a unique PIN number when they begin to work and take lunch or breaks, this results in an accurate record of hours worked by employees. Furthermore, Defendant's employees testified that if an employee incorrectly badges in, the time clock will emit a tone and a red light to indicate an error in the badging in process. Compare: <u>Perez v. Palermo Seafood, Inc.</u>, 548 F.Supp.2d 1340 (S.D. Fl. 2008) where the Court held that employer's records were inaccurate and unreliable, and waitress met her burden by establishing through credible testimony at trial that she performed work for which she was improperly compensated. ("The time cards do not accurately reflect the total hours worked by the plaintiff. Some of the time cards are illegible. Other time cards show erratic hours and do not correspond with the shifts worked by the plaintiff. For example, one-time card reflects that the plaintiff began work at 3:52 p.m. and left at 9:10

p.m. Another time card reflects that the plaintiff began work at 11:56 a.m. and left at 2:02 p.m.") See also: <u>Allen v. Board of Public Educ. for Bibb County</u>, 495 F.3d 1306 (11th Cir. 2007) (In situations where employer's records cannot be trusted and employee lacks documentation, employee has carried out his burden of proving that he or she worked overtime without compensation if he proves that he has in fact performed work for which he was improperly compensated and produces sufficient evidence to show amount and extent of that work as matter of just and reasonable inference; burden then becomes employer's, and it must bring forth either evidence of the precise amount of work performed or evidence to negate reasonableness of inference to be drawn from employee's evidence, and if employer fails to produce such evidence, then court may then award damages to employee, even though result be only approximate.) In this case unlike <u>Perez</u> or <u>Allen</u> there is not an issue of the employer's records not being trustworthy since they require a fingerprint **and** a unique PIN number to badge in and out.

ii. <u>Plaintiff has No Records or Other Evidence That Supports   His Claim of Having Worked More Than 40 Hours Per Week</u>. Plaintiff admitted at his deposition that he had no records to support his claim and that he had no other evidence that supported his allegation that he was not paid overtime by the Defendant. He also admitted that he has no records to support his allegation that he was not paid overtime and that he took an average figure and that is how he determined that he was working for 45 hours a week.

iii.  <u>No Witness Including the Plaintiff Testified That Employees Were Told to Work "Off the Clock."</u>  Defendants' employees testified at their depositions that no one on behalf of Defendant told Plaintiff or any other employee to "work off the clock" meaning to work while not badging in or to work after badging out.

iv.  <u>There is No Testimony or Evidence that Defendant Had Actual Knowledge that Plaintiff Worked Overtime Without Compensation.</u>  Rather than providing evidence that Defendant had actual knowledge of Plaintiff's alleged overtime work without compensation, Plaintiff's Disclosures as stated in his Plaintiff's Statement of Claim show instances of having been paid overtime multiple times contrary to Plaintiff's claims in the Complaint or in his deposition where he claimed of only one instance where he was paid overtime. In fact, Plaintiff's supervisor Andy Fernandez testified that he did not remember Plaintiff complain about his wages or rate of pay. (P. 20, lines 16-23) In fact, Plaintiff testified that he had no evidence to support his allegations of unpaid overtime and thus cannot meet his burden of proof. See: <u>Anderson v. Mt. Clemens Pottery Co.</u>, 328 U.S. 680 (1946) where the Court outlined the burden of proof in FLSA cases when it held that:

> In such a situation we hold that an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference. The burden then shifts to the employer to come forward with

evidence of the precise amount of
work performed or with evidence
*688 to negative the reasonableness
of the inference to be drawn from the
employee's evidence. If the employer
fails to produce such evidence, the
court may then award damages to the
employee, even though the result be
only approximate.

In this case there is no evidence by Plaintiff that he has in fact performed

work for which he was improperly compensated and he admits that he does

not have sufficient evidence to show the amount and extent of that work.

Compare: <u>Allen v. Board of Public Educ. for Bibb County</u>, 495 F.3d 1306

(11th Cir. 2007) (A genuine issue of material fact existed where a school

principal was aware that employee had been told she could not be paid

overtime and that employee had earned hours she could not be compensated

for with comp time, and principal observed another employee whom he had

allegedly told could not be paid overtime working beyond her scheduled

hours.)  In this case not only is there no sufficient evidence by the Plaintiff

that he performed uncompensated work, there is no evidence that the

Defendant was aware of the alleged uncompensated work.

v.  <u>Plaintiff Should Not Be Paid for Meal Periods Because They Were Not</u>

<u>Compensable Work Time Under Fair Labor Standards Act (FLSA).</u>  The

case law interpreting FLSA is clear that where an employee is not primarily

engaged in work-related duties during meal periods no compensation is

warranted.  Plaintiff due to the nature of his work as a parking attendant did

not have a regularly scheduled meal break but he and other parking

17

attendants were afforded a meal break and were free to spend their meal breaks in any way they wished. See the deposition of Plaintiff's supervisor's Andy Fernandez where he testified that the employees get a breaks but that the employees decide when they take the break. (P.22, lines 11-25). See: Avery v. City of Talladega, 24 F.3d 1337 (11th Cir. 1994) (Law enforcement employees' meal breaks were not spent predominantly for benefit of city, and, therefore, meal periods were not compensable under FLSA and city could offset meal break against compensable preshift and postshift time worked by employees, where employees were free to spend their meal breaks in any way they wished so long as they remained in uniform, left their radios on, and did not leave the jurisdiction.)

XIII.   Conclusion.

Defendant is entitled to summary judgment for the workweek from April 23, 2011 through the workweek ending April 27, 2013 which is the subject of the Release because there is no allegation much less summary judgment evidence that he was prevented from reading the Release. Defendant is entitled to summary judgment as to all other time periods alleged in the Complaint because the Plaintiff has failed to make a showing sufficient to establish the existence of an element essential to his case, and on which he will bear the burden of proof at trial, namely that (1) Plaintiff worked overtime without compensation and (2) Defendant knew or should have known of the overtime work.

Respectfully Submitted,

By: _____
JOSE M. CHANFRAU, IV
Fla. Bar No. 642088

18

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on June 28, 2016, the foregoing document was is being served this day on all counsel of record identified on the attached Service List in the manner specified.

VIA   Email

J.H. Zidell, P.A.                              JOSE M. CHANFRAU, IV P.A.
J.H. Zidell, Esq.                              Attorney for Defendant
Attorney for Plaintiff                         6701 Collins Avenue
300 71st Street, Suite 605                     Normandy Room
Miami Beach, FL 33141                          MB Law Offices
T: 305-865-6766                                Miami Beach, FL 33141
F: 305-865-7167                                Tel.: 786.621.5205
ZABOGADO@AOL.COM                               Fax:786.621.5652
                                               jchanfrau@josechanfraupa.com

                                               By: _____
                                                   JOSE M. CHANFRAU, IV
                                                   Fla. Bar No. 642088

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.:

RICARDO MIGUEL NARANJO CAPPELLI )
and all others similarly situated under 29 )
U.S.C. 216(b), )
          )
      Plaintiff, )
   vs. )
          )
LARIVIERE PARKING SYSTEMS LLC, )
ALFRED LARIVIERE, )
          )
     Defendants. )
_____ )

## COMPLAINT UNDER 29 U.S.C. 201- 216 OVERTIME AND MINIMUM WAGE VIOLATIONS

Plaintiff, RICARDO MIGUEL NARANJO CAPPELLI on behalf of himself and all others similarly situated under 29 U.S.C. 216(b), through undersigned counsel, files this Complaint against Defendants, LARIVIERE PARKING SYSTEMS LLC and ALFRED LARIVIERE, and alleges:

1.  This is an action arising under the Fair Labor Standards Act 29 U.S.C. §§ 201-216.

2.  The Plaintiff was a resident of Dade County, Florida at the time that this dispute arose.

3.  The Defendant LARIVIERE PARKING SYSTEMS LLC is a corporation that regularly transacts business within Dade County. Upon information and belief, the Defendant Corporation was the FLSA employer for Plaintiff's respective period of employment ("the relevant time period").

4.  The individual Defendant ALFRED LARIVIERE is a corporate officer and/or owner and/or manager of the Defendant Corporation who ran the day-to-day operations of the Corporate Defendant for the relevant time period and was responsible for paying Plaintiff's wages for

1 of 5



the relevant time period and controlled Plaintiff's work and schedule and was therefore Plaintiff's employer as defined by 29 U.S.C. 203 (d).

5.   All acts or omissions giving rise to this dispute took place in Dade County.


## COUNT I. FEDERAL OVERTIME WAGE VIOLATION

6.   This action arises under the laws of the United States.  This case is brought as a collective action under 29 USC 216(b). It is believed that the Defendants have employed several other similarly situated employees like Plaintiff who have not been paid overtime and minimum wages for work performed in excess of 40 hours weekly from the filing of this complaint back three years.

7.   This Court has jurisdiction pursuant to 28 U.S.C. § 1331 as this case is brought pursuant to The Fair Labor Standards Act, 29 U.S.C. §§ 201-219 (section #216 for jurisdictional placement).

8.   29 U.S.C. § 207 (a) (1) states, " if an employer employs an employee for more than forty hours in any work week, the employer must compensate the employee for hours in excess of forty at the rate of at least one and one half times the employee's regular rate...."

9.   Plaintiff worked for Defendants as a valet parker from on or about December 15, 2011 through on or about August 15, 2013.

10. Defendant's business activities involve those to which the Fair Labor Standards Act applies. Both the Defendant's business and the Plaintiff's work for the Defendants affected interstate commerce for the relevant time period. Plaintiff's work for the Defendants affected interstate commerce for the relevant time period because the materials and goods that Plaintiff used on a constant and/or continual basis and/or that were supplied to him by the Defendants to use

on the job moved through interstate commerce prior to and/or subsequent to Plaintiff's use of the same. The Plaintiff's work for the Defendants was actually in and/or so closely related to the movement of commerce while he worked for the Defendants that the Fair Labor Standards Act applies to Plaintiff's work for the Defendants.

11. Additionally, Defendants regularly employed two or more employees for the relevant time period who handled goods or materials that travelled through interstate commerce, or used instrumentalities of interstate commerce, thus making Defendant's business an enterprise covered under the Fair Labor Standards Act.

12. Upon information and belief, the Defendant Corporation had gross sales or business done in excess of $500,000 annually for the years 2011, 2012, and 2013.

13. Between the period of on or about December 15, 2011 through on or about August 15, 2013, Plaintiff worked an average of 55 hours a week for Defendants and was paid an average of $6.00 per hour but was never paid the extra half time rate for any hours worked over 40 hours in a week as required by the Fair Labor Standards Act. Plaintiff therefore claims the half time overtime rate based on the applicable minimum wage for each hour worked above 40 in a week.

14. Defendants willfully and intentionally refused to pay Plaintiff's overtime wages as required by the Fair Labor Standards Act as Defendants knew of the overtime requirements of the Fair Labor Standards Act and recklessly failed to investigate whether Defendants' payroll practices were in accordance with the Fair Labor Standards Act. Defendants remain owing Plaintiff these wages since the commencement of Plaintiff's employment with Defendants for the time period specified above.

Wherefore, the Plaintiff requests double damages and reasonable attorney fees from Defendants, jointly and severally, pursuant to the Fair Labor Standards Act as cited above, to be proven at the time of trial for all overtime wages still owing from Plaintiff's entire employment period with Defendants or as much as allowed by the Fair Labor Standards Act along with court costs, interest, and any other relief that this Court finds reasonable under the circumstances. *The Plaintiff requests a trial by jury.*

## COUNT II. FEDERAL MINIMUM WAGE VIOLATION

COMES NOW PLAINTIFF, through Counsel, and re-adopts the factual and jurisdictional statements in paragraphs 1-14 above and further states:

15. 29 U.S.C. § 206 (a) (1) states "..an employer must pay a minimum wage of $5.15/hr to an employee who is engaged in commerce..." [29 U.S.C. § 206 (a) (1)]". On July 24, 2007 Federal minimum wage was raised to $5.85/hr. On July 24, 2008, Federal minimum wage was raised to $6.55/hr. On July 24, 2009, Federal minimum wage was raised to $7.25/hr.

16. Between on or about December 15, 2011 through on or about August 15, 2013, Plaintiff worked an average of 55 hours a week for the Defendants. Plaintiff was paid $6.00/hr for said work in violation of the Fair Labor Standards Act as said payment of $6.00/hr did not meet the applicable Federal Minimum Wage required for said period of time. Therefore, Plaintiff claims difference between his average hourly rate of $6.00/hr and the applicable minimum wage rate of $7.25/hr for all hours worked.

17. The Defendants wage payment practices to Plaintiff for this time period did not meet the federal minimum wage law requirements as Plaintiff was not paid the required federal minimum wage for all hours worked and is therefore claiming federal minimum wage

violations.

18. Defendants willfully and intentionally refused to pay Plaintiff's minimum wages as required by the Fair Labor Standards Act as Defendants knew of the Federal Minimum Wage requirements of the Fair Labor Standards Act and recklessly failed to investigate whether Defendants' payroll practices were in accordance with the Fair Labor Standards Act. Defendants remain owing Plaintiff these wages since the commencement of Plaintiff's employment with Defendants for the time period specified above.

Wherefore, Plaintiff requests double damages and reasonable attorney fees from the Defendants, jointly and severally, pursuant to the Fair Labor Standards Act and as cited above, to be proven at the time of trial for all minimum wages still owing from Plaintiff's entire employment period with Defendants or, as much as allowed by the Fair Labor Standards Act -- whichever is greater along with court costs, interest, and any other relief that this Court finds reasonable under the circumstances. *The Plaintiff requests a trial by jury.*

Respectfully Submitted,

J.H. Zidell, Esq.
J.H. Zidell, P.A.
Attorney For Plaintiff
300 71st Street, Suite 605
Miami Beach, Florida 33141
Tel: (305) 865-6766
Fax: (305) 865-7167
Email: ZABOGADO@AOL.COM

By:__/s/ J.H. Zidell_____
    J.H. Zidell, Esq.
    Florida Bar Number: 0010121